**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs Tracy
Howard, Adina Ringler, and Trecee Artis*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| TRACY HOWARD, ADINA RINGLER, and TRECEE ARTIS on behalf of themselves and those similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>THE HAIN CELESTIAL GROUP, INC. d/b/a EARTH'S BEST,<br><br>       Defendant. | Case No.: 3:22-cv-00527-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 16, 2024<br>Time: 10:00 a.m.<br>Location: San Francisco, Courtroom 4<br><br>Hon. Vince Chhabria |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

        A.      The Products Are Intended for Children Under Two. ...............................2

        B.      Hain's Marketing Deceives Consumers....................................................3

        C.      Plaintiffs Paid a Price Premium ...............................................................5

III.    ARGUMENT ......................................................................................................5

        A.      Legal Standard .........................................................................................5

        B.      Plaintiffs can show a triable issue of fact on economic injury. ..............5

        C.      The evidence creates a triable issue of fact on whether the Products are intended
                for children under two..............................................................................9

                1.      Plaintiffs' Evidence Establishes the Products Are Intended for Children
                        Under Two ...................................................................................10

        D.      The evidence creates a triable issue of fact on whether consumers are likely to be
                deceived about the health benefits of the products. ................................15

        E.      The Evidence Creates a Triable Issue of Fact Regarding Whether Consumers
                Were Likely to be Deceived About the Healthiness of the Products....................17

        F.      Consumers Purchasing for Children Under Two Were the Target.......................20

        G.      The Evidence Creates a Triable Issue of Fact Regarding Whether the Products
                Are Unhealthy.........................................................................................22

        H.      The Claims Are Not Preempted...............................................................24

IV.     CONCLUSION..................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) ............................................................ 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 6

*Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421 F.3d 981 (9th Cir. 2005) ................................................................................................................................ 15

*Brockey v. Moore*, 107 Cal. App. 4th 86 (2003) ......................................................................... 16

*Broomfield v. Craft Brew Alliance*, Case No. 17cv2038-BLF, 2018 U.S. Dist. LEXIS 177812, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ........................................... 7

*Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283 (9th Cir. 2021) ................................................ 25

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006) .................................. 16

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003) .................. 17

*Copart, Inc. v. Sparta Consulting, Inc.*, 2018 U.S. Dist. LEXIS 154062 (E.D. Cal. September 10, 2018) ........................................................................................................... 16

*Day v. AT & T Corp.*, 63 Cal. App. 4th 325 (1998) ................................................................... 15

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ................................................................... 15

*Farar v. Bayer AG*, No. 14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729 (N.D. Cal. Nov. 15, 2017) .................................................................................................... 7

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148 (D. Nev. 2010) .................................................................................................................................. 18

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................... 5

*Howard v. Gerber Prods. Co.*, No. 22-cv-04779-VC, 2023 U.S. Dist. LEXIS 54416 (N.D. Cal. Mar. 29, 2023) ...................................................................................... 19

*Jensen v. Natrol, LLC*, 390 F. Supp. 3d 1100 (N.D. Cal. 2019) ................................................. 7

*Johnson v. General Mills, Inc.*, 2011 U.S. Dist. LEXIS 154213 (C.D. Cal. March 03, 2011) ................................................................................................................................. 19

*Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO, 2018 U.S. Dist. LEXIS 42938 (N.D. Cal. Mar. 15, 2018) ........................................................................... 19

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (Cal. Ct. App. 2003) .................... 15, 20

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) ..................................................... 5

*Meaunrit v. The Pinnacle Foods Grp., LLC*, 2010 WL 1838715 (N.D. Cal. May 5, 2010) .................................................................................................................................. 25

*Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193 (9th Cir. 2014) ......................................... 18

*Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913 (N.D. Cal. March 5, 2010) ............................................................................................................................ 16, 17

*Miller v. Peter Thomas Roth, LLC*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854 (N.D. Cal. Jan. 22, 2020) ....................................................................................... 6

*Moore v. Trader Jo's Co.*, 4 F.4th 874 (9th Cir. 2021) ............................................................. 20

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867 (N.D. Cal. 2016) ................... 5, 17, 19

*Nat'l Med. Enters. v. Bowen*, 851 F.2d 291 (9th Cir. 1988) ..................................................... 25

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002) ............................................................................ 15

*O'Shea v. Epson Am., Inc.*, No. CV 09 -8063 PSG (CWx), 2011 U.S. Dist. LEXIS 85273 (C.D. Cal. July 29, 2011) ................................................................................ 17

*Patricia A. Murray Dental Corp. v. Dentsply Int'l, Inc.*, 19 Cal. App. 5th 258 (Cal. 2018) ............................................................................................................... 20

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) ....................... 5, 6, 8

*Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449 (9th Cir. 1983)................. 5, 8

*Robie v. Trader Joe's Co.*, No. 20-cv-07355-JSW, 2021 U.S. Dist. LEXIS 117336 (N.D. Cal. June 14, 2021) ........................................................................................... 20

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 642 F. Supp. 2d 957 (N.D. Cal. 2008)................................................................................................................ 16, 17

*State Farm v. Superior Court of Los Angeles County*, 45 Cal. App. 4th 1093 (1996) ......................................................................................................................... 16

*Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) .................................................. 9

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ......................................... 6

*Weiner v. Snapple Bev. Corp.*, 2011 U.S. Dist. LEXIS 6094 (S.D.N.Y. Jan. 21, 2011) ........................................................................................................................... 8

*Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024)......................................... 21

*William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255 (9th Cir. 1995) ........................... 15, 18, 21

# STATUTES

21 USC §§ 467.......................................................................................................................... 25

21 USC §§ 607.......................................................................................................................... 25

# RULES

Fed. R. Civ. P. 37(c)................................................................................................................. 24

Fed. R. Civ. P. 56(a) .................................................................................................................. 5

# REGULATIONS

21 C.F.R. § 101.13 ..................................................................................................................... 9

21 C.F.R. § 101.65(d) ................................................................................................................ 9

56 Fed. Reg. 60366 (Nov. 27, 1991)......................................................................................... 9

56 Fed. Reg. 60421 (Nov. 27, 1991)......................................................................................... 9

58 Fed. Reg. 2302 ...................................................................................................................... 9

9 C.F.R. § 317.313(b)(3) .......................................................................................................... 25

9 C.F.R. § 381.413 ................................................................................................................... 25

9 C.F.R. § 412.2(b) .................................................................................................................. 25

Fed. Reg. 2304 .......................................................................................................................... 9

Fed. Reg. 2305 .......................................................................................................................... 9

## I.    INTRODUCTION

This case involves Defendant Hain Celestial Group, Inc.'s ("Hain" or "Defendant") unlawful and misleading labeling of certain Earth's Best brand products with nutrient content claims such as "Excellent Source Calcium, Vitamins C & D," and "4g protein." While Hain's motion for summary judgment takes a kitchen sink approach, it must fail. The evidence overwhelmingly creates a triable issue of fact on all of the elements Hain challenges.

As an initial matter, Hain argues that Plaintiffs have failed to present evidence of economic injury because they cannot remember the number of Products they purchased. But this assumes Plaintiffs must prove their exact damages. California law requires only that Plaintiffs provide a reasonable estimate of damages, which they have done. Hain does not dispute that each Plaintiff testified that they purchased at least one of the Products. Further, Plaintiffs obtained IRI data that shows the price of individual products during the period in which they purchased such that Plaintiffs can determine a reasonable estimate of the cost of each Product. Finally, Hain concedes that Plaintiffs' conjoint estimates the price premium associated with the label claims. Thus, Plaintiffs' evidence is sufficient to estimate damages at trial.

Regarding the unlawfulness claims, there is a clear fact dispute on whether the Products are intended for children under two. Hain's evidence is contradicted by over thirty presentations that confirm that during the period in which Plaintiffs purchased the Products, Hain pitched the Products to retailers and consumers alike as being intended specifically for children under two. Indeed, Plaintiffs' survey confirms that a majority of consumers purchased the Products for children under two. Thus, a jury must decide this issue.

Regarding the fraud-based claims, deception is almost always triable because the primary evidence in a false advertising case is the advertising itself. This case is no different. The jury can evaluate Hain's advertising, hear that Hain's Products are not recommended for young children, and determine whether Hain's advertising was likely to mislead reasonable consumers, i.e., people like them and their friends and family members. Essentially, the jury is a body of reasonable consumers. California law is clear that, although extrinsic evidence such as consumer

surveys and expert opinions can assist the trier of fact, they are not necessary. The Court can deny summary judgment as to the fraud claims on this basis alone.

In any event, the survey evidence in this case overwhelmingly supports Plaintiffs' case and precludes summary judgment. Plaintiffs' survey demonstrates that over 85% of consumers believe the Products are healthy due to the at-issue label claims. The Court has already held that this evidence satisfies *Daubert*. ECF 151 at 4, n. 3. Finally, Plaintiffs' new expert on infant and toddler nutrition also confirms that the Products are not healthy for children under two. Relying on peer-reviewed research, she concluded that "Earth's Best Products directly contribute to health risks and are therefore unhealthy for children." Smith Dec., Ex. 30 (Taylor Report) at ¶ 2.

Finally, Hain's argument that USDA approval provides a shield is lacking in both fact and law. Even if Hain had produced the evidence of approval during discovery, an approval from the USDA that violates its own regulations is not given preemptive effect.

## II.    BACKGROUND

### A.    The Products Are Intended for Children Under Two.

As Hain admits, "Hain Celestial sells a variety of children's foods under its Earth's Best brand, whose core products include infant formula and baby food." Motion at 3. Yet, that is where the "undisputed" facts presented in Defendant's motion end. Hain's Smoothie Products and meat-based protein pouches are intended for children under two.

Hain's portfolio of pouch products includes products with a front label age indicator and those without a front label indicator. However, beyond the labeling difference, the Products are nearly identical. The products are similar in format (pouches filled with pureed foods), ingredients (featuring two to four different fruits and vegetables), size (4-4.5 oz), and in how they are marketed in store (sold in the baby food aisle).

The majority of Hain's internal documents confirm its intent. Hain's presentations to retailers list the smoothie Products as being intended for children under two. Reynolds Dec. Exs. 11-45. The smoothie products are marketed using Sesame Street characters, which Hain emphasized as being among the top characters for children 0-2 years old. In developing the protein line, Hain marketed to ███████████████████████████

████████ Reynolds Dec., Ex. 2. It presented the protein and Sesame Street Products as being for "stage 3," which Hain defines as being for age 9+ months. *See*, *e.g.*, *id.*, Ex. 41 (showing Sesame Street pouch as Stage 3, 9+ months in retailer presentation from 2021). Hain's description of the foods as "toddler" foods does not clarify who the Products are specifically intended for either. "Toddler" is defined by both Hain and the CDC as a child as young as one year old. *See* Reynolds Dec., Ex. 28 (████████████████████████); *id.*, Ex. 58 (CDC defining toddler as 1-2 years of age).

Defendant states as "facts" that its Products are not for children under two because they are snack products for "preschoolers" with "backpack[s]," and according to Hain, preschool "typically starts at [age] two plus." Reynolds Dec., Ex. 1 at 149:24. But as any parent of young children knows, most preschools require that a child be self-toileting, which typically occurs at age 3-4. *See id.*, Ex. 61. Moreover, according to Hain, this is also the age when parents begin shopping outside of the baby food aisle. *Id.*, Ex. 3 ██████████████████████████). But Hain's Products are sold in the baby aisle, their targeted consumer is mothers with kids under two, and the Products are nearly identical in composition to the products Hain admits are intended for children under two.

Hain also emphasizes that the Products are "snacks" and that children under two do not eat snacks, despite having no research on what age parents start giving kids snacks. *Id.*, Ex. 1 at 162:3-5. But Hain could not articulate why it believes children start snacking only at two years old. Instead, its own expert confirms that children under two are supposed to have two snacks a day. Smith Dec., Ex 32 ¶ 21. When asked whether children under two could chew solid food, Hain responded "the overwhelming majority of kids under two cannot." Reynolds, Ex. 1 at 161:2-8. But this was based on Mr. Ginsberg's own supposed experience as a parent, and Hain could not point to any other basis for this argument.

### B.    Hain's Marketing Deceives Consumers

Hain's use of nutrient content claims leads consumers to believe the Products are a healthy, recommended source of nutrients for their young children under two. The best evidence of this is the labels themselves: the claims are prominently featured on the front labels, appearing

in large text in the center of the label that is sure to catch a consumer's eye. The labels feature photos of fresh and whole fruits, meats, and vegetables, the word "organic" *three* times on the front label, and the name brand "Earth's Best." Indeed, Hain admits that consumers will rely on the labels when purchasing the Products and that things like "organic" and "Earth's Best" contribute to the perception that the product is healthy. Reynolds Dec., Ex. 1 at 35:17-21; 37:24-38:3 ("I think labels certainly provide an input to a consumer's decision").

Hain's evidence confirms it wanted the labels to communicate that the Products are healthy. Hain testified that "We want our consumers to know that our products are wholesome, good for you, that you should feel good about giving your kids Earth's Best." *Id*. at 35:13-15. This is because it makes money for Hain. Hain's 2018 presentation to Sesame Street states that

█████████████████████████████████████████████████

████████████████████████████████ Reynolds Dec., Ex. 4.

Plaintiffs' expert confirms that the Products are not healthy and run afoul of the USDA and World Health Organization ("WHO") recommendations for nutrition for children under two. The Products are all pureed pouch products that the WHO recommends not be consumed after age 12 months to allow for increased exposure to textures and diverse foods. Smith Dec., Ex. 30 (Taylor Report) at ¶¶ 59, 67 n. 36 (WHO report recommending purees not be fed after 12 months), 73. They are all pouch products that are more likely to be consumed quickly and completely than when purees are spoon fed, leading to overconsumption of products that are displacing recommended nutrient dense sources of nutrition. *Id*. ¶ 80. The Products are all ultra processed foods that carry an increase in health risks. *Id*. ¶¶ 27, 44. They all have sweet profiles that mask the taste of vegetables, which inhibits the ability of the child to like vegetables in the future and leads to picky eating. *Id*. ¶ 67, 87, 88. The smoothie products exceed the sugar limits recommended by the WHO, and the apple blueberry pouch includes 4g of added sugar, which the WHO and USDA recommend completely avoiding for children under two. *Id*. ¶ 45, 78. In sum, the Products are not healthy and instead present health risks. Consumers are therefore deceived by Defendant's health washing nutrient content claims.

### C.    Plaintiffs Paid a Price Premium

Defendant does not dispute that Plaintiffs all purchased at least one of each of the Products. They do not dispute that Plaintiffs' expert has calculated a price premium associated with each of the Products. Thus, Plaintiffs are able to demonstrate they suffered an economic injury by paying more for the Products than they would have otherwise, and will be able to provide a reasonable estimate of the restitution and damages they seek at trial.

## III.    ARGUMENT

### A.    Legal Standard

A party is entitled to summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party who seeks summary judgment bears the initial responsibility of identifying an absence of a genuine issue of material fact." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 887 (N.D. Cal. 2016). In response, "the non-moving party must present specific facts showing that there is a genuine issue for trial." *Id.* "A genuine issue exists if the non-moving party presents evidence from which a reasonable fact-finder, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor." *Id.*

### B.    Plaintiffs can show a triable issue of fact on economic injury.

In calculating damages or restitution, "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). "The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Id.* Summary judgment is appropriate only where plaintiffs have no testimony, expert witnesses, or documents providing evidence from which a jury could estimate damages. *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1452 (9th Cir. 1983); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (Plaintiff need only "provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award").

Here, Plaintiffs seek to recover the price premium associated with the at-issue label claims, which is "well-established" as the "valid measure of damages" in this case. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104 (N.D. Cal. 2018). To do so, Plaintiffs' expert Steven Gaskin has designed a conjoint analysis that will isolate the value that consumers in the relevant market attached to the at-issue label claims. Based on this analysis, Mr. Gaskin concluded that the "4g protein per serving" claim on the chicken casserole pouch commanded a 22.7% price premium, and the "excellent source of calcium, vitamins C&D" claim on the smoothie pouches commanded a 24.4% price premium. Reynolds Dec., Ex. 52 ¶ 12. Thus, to determine Plaintiffs' damages, Plaintiffs will multiply the price premium factor by the price paid for the units each Plaintiff purchased to arrive at the amount that Plaintiffs overpaid as a result of the alleged mislabeling.

Defendant does not dispute that Mr. Gaskin has presented a conjoint survey that measures the price premium associated with each at-issue claim. Nor does Defendant dispute that there is evidence that Plaintiffs purchased at least one of the relevant pouches. Instead, Defendant complains that Plaintiffs have not presented evidence of total number of pouches they each purchased, but "exact proof" of their total damages is not necessary. *Pulaski*, 802 F.3d at 989.

Plaintiffs have each testified that they purchased Products on at least one occasion. Reynolds Ex. 46 (Ringler) at 54:8-17, 61:16-21, 62:3-6, 64:20-22, 65:17-66:1, 66:23-25; Ex. 47 (Artis) at 59:1-13; Ex. 48 (Howard) at 59:7-23, 63:11-20. Nothing more is required. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (At summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [their] favor."); *Miller v. Peter Thomas Roth, LLC*, No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854, at *15 n.1 (N.D. Cal. Jan. 22, 2020) ("[Plaintiff] testified at deposition that she purchased the challenged product in 2018, that is sufficient to preclude summary judgment on this point."). Hain's argument assumes that Plaintiffs must establish their precise number of purchases with exact proof, but that is a fiction of Defendant's own creation. Hain's argument that Plaintiff's deposition testimony must be ignored because it is "uncorroborated and self-serving" is also false. There is no rule that a Plaintiffs' testimony alone is never enough to create

a triable issue of fact. *Villiarmo*, on which Hain relies, demonstrates this. While the Court did reject plaintiffs' testimony on one fact as "self-serving", it accepted testimony on several others. *See*, *e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (accepting testimony that plaintiff in employment action engaged in a protected activity). Plaintiffs have all testified that they purchased the Products on at least one occasion and Defendant does not dispute this. Thus, Plaintiffs' evidence is sufficient to establish an issue of fact to defeat summary judgment. *Miller*, 2020 U.S. Dist. LEXIS 10854, at *14 ("[Plaintiff] also provides sufficient basis to find she suffered the requisite harm. As above, Paulson testified at her deposition that she purchased [the product]. [Thus] [s]he paid an undue price premium."); *see also Farar v. Bayer AG*, No. 14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729, at *50 (N.D. Cal. Nov. 15, 2017) (plaintiff's testimony sufficient to establish injury-in-fact); *Jensen v. Natrol, LLC*, 390 F. Supp. 3d 1100, 1101, n.1 (N.D. Cal. 2019) (plaintiff's testimony sufficient to create issue of fact on standing and reliance at summary judgment) (J. Chhabria).

The fact that Hain subpoenaed records from Safeway that do not reflect Plaintiffs' purchases is also of no moment. Preliminarily, the only purchase records that appear in the subpoenaed records are those for which each Plaintiff used the relevant loyalty numbers when purchasing. If the Plaintiff did not use their loyalty number at checkout, the purchases they made do not appear in the subpoenaed records. Further, Hain obtained records only from Safeway. Only Plaintiffs Howard and Artis testified to having purchased the Products at Safeway. *See* Reynolds Dec., Ex. 47 (Artis) at 39:10-12; *id.*, Ex. 48 (Howard) at 89:11-15; ECF 184 at 2, n. 1 (Plaintiff Ringler did not testify that she purchased the Products from Safeway). And, all three Plaintiffs testified to having purchased the Products from other stores as well, including Target, Costco, and Walmart. *See id*. Hain did not obtain those records and therefore cannot call into question Plaintiffs' evidence that they purchased Products from those stores.

Defendant also suggests there is no evidence of the price each Plaintiff paid. Not so. Plaintiffs subpoenaed and obtained evidence from Information Resources, Inc. (now known as Circana) which shows the pricing data in California for each product during the period Plaintiffs purchased. IRI data is reliable evidence of the price consumers paid for the Products. *Broomfield*

*v. Craft Brew Alliance*, Case No. 17cv2038-BLF, 2018 U.S. Dist. LEXIS 177812, 2018 WL
4952519, at *19 (N.D. Cal. Sept. 25, 2018) (court had no issue regarding the prices expert used,
which can and must include prices "higher or lower than the prices of currently offered products"
and not the exact prices charged for the product); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671
(C.D. Cal. 2014) (restitution or out-of-pocket costs can be "readily calculated using Defendants'
sales numbers and an average retail price."); *see also*, *e.g.*, Reynolds Dec., Exs. 5, 13 (Hain relies
on IRI data for sales information). Each Plaintiff testified to the time period during which they
purchased the Products. *Id.*, Ex. 46 at 11:8-9; 62:10-14 (Ringler first purchased around January
2019); Ex. 47 at 59:1-13 (Artis first purchased around July 2021); Ex. 48 at 11:8-9, 57:25-58:24
(Howard first purchased around May 2021). According to the IRI data, ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████. Hain's

documents corroborate these prices. *See* Reynolds Dec., Ex. 6 ████████████████

████████████████████████████████████████████████████████████

      Thus, contrary to Hain's assertion that *Weiner v. Snapple Bev. Corp.* is an "analogous
case," the evidence here is vastly different. In *Weiner*, the Southern District of New York granted
summary judgment where the plaintiff had only testimony of the approximate date of their
purchase, with "no other evidence from which to calculate the premium they paid for Snapple."
*Weiner v. Snapple Bev. Corp.*, 2011 U.S. Dist. LEXIS 6094, at *9 (S.D.N.Y. Jan. 21, 2011).
There, the plaintiffs did not have expert testimony to establish the price premium, and thus the
court faulted the plaintiff for the inability to calculate the premium. *Id*. Also important, the court
applied New York law which requires demonstrating damages "with a degree of certainty,"
whereas California law only requires a "reasonable approximation." *Pulaski*, 802 F.3d at 989.

      Here, unlike *Weiner*, Plaintiffs' evidence is more than sufficient to allow the jury to
estimate damages, which is all that is required at trial. *Rickards*, 704 F.2d at 1452. Plaintiffs will
rely on expert evidence and widely accepted sales data the reflects the amount consumers paid at
"multi-outlet" stores, including Safeway, Target, and Walmart. *See* Smith Dec., Ex. 26, ¶60.

Plaintiffs' expert used a conjoint survey to determine the price premium associated with each Product. Plaintiffs' testimony demonstrates they purchased the Products on at least one occasion. And reliable third-party data that is corroborated by Hain's own documents establishes a reasonable estimate of the price paid for each pouch. Thus, Plaintiffs have presented evidence sufficient to defeat summary judgment on their economic injuries.

### C.    The evidence creates a triable issue of fact on whether the Products are intended for children under two

The UCL unlawful prong claim has two elements: (1) whether the defendant engaged in an unlawful labeling practice (i.e., unlawfulness); and (2) the amount of money the defendant "may have acquired by means of" its unlawful labeling practice (i.e., restitution.). *See Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155 (2010).

The FDA regulates "nutrient content claims" on the labels of food products. *See generally* 21 C.F.R. § 101.13. Hain does not dispute that the Products contain nutrient content claims. The FDA also promulgated a regulation that states unequivocally: "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age." 21 C.F.R. § 101.13(b)(3). It did so because it believes that marketing products as an important source of specific nutrients is inappropriate when "the agency lacks evidence that . . . an increased intake for nutrients such as fiber are appropriate and recommended for infants and ***toddlers***." 56 Fed. Reg. 6042 (emphasis added); *see also id.* at 60366 (FDA views voluntary nutrient declarations "as an effort to market the food as a significant source of nutrients"). In promulgating this rule, the FDA addressed a comment that "such a prohibition would unfairly restrict nutrient content claims on foods primarily intended for infants and children less than two years of age while allowing such claims on products that, though aimed primarily at adults and older children, are actively promoted either on the label or in the advertising as being for use by infants or children less than 2 years of age." 58 Fed. Reg. 2302, 2304. The FDA responded as follows: "The agency has not prohibited claims on foods that are promoted for infants and children under the age of 2 but that are intended primarily for adults and older children. However, the agency cautions that any nutrient content claims made on

such products in association with a statement about use of the food for infants and children under the age of 2 would be misleading under section 403(r) of the act unless such claim has specifically been permitted for such a population by regulation." 58 Fed. Reg. 2302, 2305. The FDA's use of "primarily" acknowledges that a food could be intended for multiple age groups, and in some circumstances intended more for one age group than another.

### 1.    Plaintiffs' Evidence Establishes the Products Are Intended for Children Under Two

Hain consistently marketed the Products for children under two, demonstrating that regardless of the fine print on the back label, it still intends the Products be consumed by children under two. Thus, the Products violate parallel state and federal regulations, which serves as the predicate for Plaintiffs' unlawful claim under state law.

Hain has stated that its "target" consumer is "████████████████████████████." Reynolds Dec., Ex. 12. Hain admits the Products are for toddlers. *See, e.g.*, Smith Dec., Ex. 10 at 150:3-5. The Centers for Disease Control (CDC) defines "toddler" as "1-2 years of age." Reynolds Dec., Ex. 58 (CDC website). The oxford English dictionary defines "toddler" to mean "a child who has only recently learnt to walk." *Id.*, Ex. 59. According to Hain's website, a child begins to walk around 12 months. *Id.*, Ex. 60. Hain's presentations to retailers represented the Products as being for children under two. For example, as seen below, a presentation to Walmart from 2021 placed the Sesame Street pouches in a category for children "9+ months."



Similarly, as seen in multiple retailer presentations, Hain emphasized the appeal of Sesame Street characters to children under two, touting that Elmo and Cookie Monster are ██████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *See* Reynolds Dec., Ex. 17.

When asked why Hain's labels include the "For Ages 2+" disclaimer, Hain's 30(b)(6) witness testified that it was because of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

When asked why the Products are specifically for children two years old, Hain's 30(b)(6) witness testified that it was because: (1) The pouches are snack products and "snacks are a behavior that typically starts in preschool" (Reynolds, Ex. 1 at 149:13-25); (2) The size of the pouch is larger for larger kids and for toddlers (*id*. at 150:3-5); (3) the use of Sesame Street branding (*id*. at 150:12-17); and (4) The "complexity" of ingredients like fruit, vegetables, and yogurt (*id*. at 150:12-16).

Defendant's own evidence debunks these ad hoc explanations as to why the Products are supposedly intended for children under two. Hain's expert Dr. Clemens' report addresses the nutritional needs of children under two. In doing so, he describes the Products as snack products for "young children" which he confirmed meant children under two. Smith Dec., Ex. 32 (Clemens Report) at ¶ 19; Reynolds Dec., Ex. 56 at 29:9-18. He cites to a report that states children should begin a "regular meal pattern of three small meals and two to three planned between-meal snacks" beginning at age one. *See*, Smith Dec., Ex. 32 at n. 3; Reynolds Ex. 62. Thus, contrary to Defendant's testimony, snacking is not a behavior that starts in preschool. The size of the pouch is also not an indication of the intended age. The smoothie pouches are 4.2 oz and the protein pouches are 4.5 oz. Defendant admitted that the meat-based protein pouches that

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

are intended for children 9+ months were the same size pouch (4.5 oz) before and after the addition of the protein claim and age disclaimer. *Compare* Smith Decl. Ex. 5 at 13 (4.5 oz chicken casserole product label prior to adding the protein claim) *with id.*, Ex. 5 at 12 (4.5 oz chicken casserole product claim with the protein claim); *see also* Reynolds Dec. Ex. 1, 153:9-12. Hain's other pouches that are labeled as being for children 6+ months and 9+ months are also the same size. For example, the Pumpkin Cranberry Apple pouch is labeled as being for Stage 3, 9+ months and is 4.2 oz. *See* Smith Decl., Ex. 6 at 4.

The use of Sesame Street branding is also not dispositive of the Products being intended for children under two, as evidenced by Hain's own documents and explained above. Hain argues that the "birth to backpack" timelines that feature Sesame Street products as being intended for children under two are "old versions," but Hain cannot point to a single internal document that substantiates its claim that these retailer presentations are incorrect. Hain's internal documents demonstrate it made presentations to retailers during the period of Plaintiffs' purchases (2019-2021), and in all of those presentations, the Products were listed as being intended for children under two years of age. Reynolds Dec. Exs. 11-45 ( ████████████ ████████████████████████████████████████████████████ ████████ ).

Hain's claim that the "complexity" of the ingredients is an indication that the products are intended for children two and older is also contradicted by its own evidence. The smoothie pouches have two fruit purees or puree concentrates and yogurt, along with water, and are fortified in order to make nutrient content claims. *See*, *e.g.*, Smith Decl., Ex. 1 at 5 (apple blueberry label), 16 (peach banana label). All of Hain's Earth's Best products that are labeled as "Stage 2, 6+ Months" contain at least two different fruits or vegetables. *See*, *e.g.*, Smith Dec., Ex. 6 at 2-8 (product labels). One of the pouches for a 6+ month old includes a combination of four fruits and vegetables: apple, sweet potato, pumpkin, and blueberry. *See id.* at 6. According to Hain, a 9-month-old should be progressing to "chunkier foods and more complex varieties." Reynolds Dec. Ex. 63 (Hain Blog Article, "Baby Development Guide."). Thus, the purported "complexity" of the pouches does not entitle Hain to summary judgment.

Defendant's own evidence also demonstrates that the Protein pouches are intended for Stage 3, i.e., for children 9+ months. *See* Smith Dec., Ex. 23 at 23 (photos of protein pouches, describing them as "baby/toddler foods" and indicating they are "Stage 3."); Reynolds Dec., Ex. 6 (showing protein pouches as being for "9+ months").

Hain argues that the fact that its other baby food products are labeled differently by including age disclaimers on the front label demonstrates that these Products are intended for children under two. *See* Motion at 12-13. A more plausible interpretation (and one the Court must draw in favor of Plaintiffs as the non-movants) is that these labels show that Hain knows how to communicate the age for which the products are intended: on the front label. *See* Smith Decl., Ex. 6 (showing intended ages on the front label, in different color font and with banners to highlight the ages). The products at issue here bury the age disclaimer in small font hidden on the back label. Thus, the comparison of the two product lines demonstrates that Hain did not intend the products be purchased for children over two, and instead it only included the disclaimer in an attempt to sidestep the regulations and allow it to gain a competitive advantage.

Hain cites evidence that its website, accessed Nov. 12, 2024, now include the "ages 2+" disclaimer under the word "toddler."[2] However, Hain offers no explanation as to when those disclaimers were added online. At the time Plaintiffs filed their complaint, these disclaimers did not exist on its website. Reynolds Dec., Ex 63. Instead, the only indication of the age of a toddler appeared on Defendant's "toddler milk drink powder" which is labeled as being for children ages "1 & up." Reynolds Decl., Ex. 64.

Defendant argues that the products being sold in the baby food aisle does not show that the Products are intended for children under two. Motion at 15. Contrary to Defendant's suggestion that there "is no evidence that supports this allegation," Hain's own documents confirm that "███████████████████████████████████████████." Reynolds Dec., Ex. 3. According to the American Academy of Pediatrics, "the average age toilet training begins in the United States is between 2 and 3 years of age." Reynolds Dec., Ex. 61.

---

[2] Notably, Defendant did not produce these screenshots before the close of fact discovery. Indeed, they were not even accessed before the close of fact discovery, July 15, 2024.

Hain's documents also confirm that to ████████████████████████████████████
████████████████████████ Reynolds Dec., Ex. 3. Hain's presentations representing
that the Products are intended for children under two were used in meetings with retailers, which
informed the retailers' decisions to sell the products in the baby food aisle of stores. Retailers
sell the Products in the baby food aisle to "maximize" their sales. Reynolds Dec., Ex. 1 at 135:
20-25. And, shoppers leave the aisle by the time their child turns three. Indeed, even in this
litigation, Hain has admitted its Products are intended for children "between one and three years
of age." ECF 41 at 11.

      Plaintiffs' expert Dr. Dennis conducted a consumption behavior survey modeled off
Hain's expert's survey. The survey shows that over 50% of purchasers purchased the Products
for the first time when their child was under the age of two. Smith Dec., Ex. 29 at ¶¶ 9-10.

      Defendant re-defines the results of Dr. Dennis's survey to serve its arguments. Rather
than accepting the statistics from Dr. Dennis's behavior survey as reported – that is, statistics
that show that a majority of purchasers of the at-issue Products purchased the Products for
children under the age of two years when first purchasing the Products – Hain narrows the
measurement to focus on purchasers who exclusively purchased the products for children under
the age of two years. By this artificial narrowing of the measurement (to exclude consumers who
purchased both for children under the age of two and for older children), Hain attempts to claim
that Dr. Dennis's survey results are lower than 50%. This is sophistry pure and simple.

      Hain also suggests that to demonstrate that a Product is intended for a particular
population segment, that targeted segment must be responsible for a "substantial majority of
purchases of the products." *See* Motion at 14. But Dr. Wilcox states as much with no citation.
*See* Smith Dec., Ex. 31 (Wilcox Rebuttal Expert Report) at ¶ 17. Hain does not explain why
Plaintiffs' survey results do not support the conclusion that a substantial majority of the
purchasers did purchase the products for a child under the age of two. Plaintiffs' survey results
showed that 54% to 55% of purchasers (across the two product types) reported purchasing the
Products for children under the age of two years, which is enough to create an issue of fact on
whether the Products are intended for children under two.

**D.     The Evidence Creates a Triable Issue of Fact on Whether Consumers Are Likely to be Deceived About the Health Benefits of the Products.**

Claims for deception "under the California consumer protection statutes are governed by the 'reasonable consumer' test." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). To meet this test, a plaintiff must "'show that members of the public are likely to be deceived,'" which requires proof only of a "probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (internal citations omitted; quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003)). Courts have found this standard satisfied "where 21 to 34 percent of the recipients were deceived." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995).[3]

California's consumer protection statutes do "not call for a showing of 'actual deception or confusion caused by misleading statements.'" *Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985, (9th Cir. 2005) (quoting *Day v. AT & T Corp.*, 63 Cal. App. 4th 325 (1998). Thus, Plaintiffs have no burden to prove that any consumers actually were deceived, only that it was *likely* that a significant portion of reasonable consumers would be deceived. *See Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, *13 (N.D. Cal. March 5, 2010) ("'a section 17200 violation [can be shown] even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.'") (quoting *State Farm v. Superior Court of Los Angeles County*, 45 Cal. App. 4th 1093, 1105 (1996)); *Copart, Inc. v. Sparta Consulting, Inc.*, 2018 U.S. Dist. LEXIS 154062, *52 (E.D. Cal. September 10, 2018) ("There can be a violation without 'actual deception, reasonable reliance and damage.'"). For purposes of the analysis, a "'reasonable consumer' is the ordinary consumer acting reasonably under the circumstances, and 'is not versed in the art of inspecting and judging a product, [or] ***in the process of its preparation or manufacture***." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.

---

[3] California case law does not define what constitutes a "significant portion" of consumers, but refers to the standard under the Federal Trade Commission act, which is identical in this respect. *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 890 (N.D. Cal. 2016) (citing *Lavie*, 105 Cal. App. 4th at 508); *see also, Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 591 (3d Cir. 2002) (accepting "25% figure as sufficient proof that the MNTS product name 'deceives a substantial portion of the intended audience'").

App. 4th 663 (2006) (emphasis added).

In arguing for summary judgment on this issue, Hain overlooks the fact that the labels themselves are sufficient. California law is clear that "'extrinsic evidence,' such as expert testimony or consumer surveys" is not necessary "to sustain the plaintiffs' burden" of proof. *Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663, 681 (2006). Instead, "with regard to the showing of deception, 'the primary evidence in a false advertising case is the advertising itself.'" *Silicon Image, Inc. v. Analogix Semiconductor, Inc*., 642 F. Supp. 2d 957, 968 (N.D. Cal. 2008) (quoting *Colgan*, 135 Cal. App. 4th at 682 and *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)). From that, the jury can determine "[t]he 'misleading character' of a given representation" by "applying its words to the facts." *Colgan*, 135 Cal. App. 4th at 679.

For example, in *Colgan*, plaintiffs contended that the defendant's "Made in U.S.A." claim was misleading because most of the relevant components were manufactured abroad and simply assembled in the U.S. 135 Cal. App. 4th at 680. The plaintiff's only evidence of likelihood of deception was "the 'Made in U.S.A.' representations themselves; the declaration of a Leatherman executive describing the various manufacturing processes the Leatherman tool components underwent outside the United States; and the testimony of two plaintiffs who attested to being misled by Leatherman's representations." *Id*. at 682. The defendant argued that Plaintiffs had no evidence to show that consumers interpreted the phrase "Made in U.S.A." to exclude any foreign manufacturing. *Id*. at 681-82. The court rejected that argument and concluded not only that the plaintiffs' evidence was sufficient, but that "no reasonable trier of fact could conclude otherwise." *Id*. at 683. Numerous courts have similarly held that a jury can determine whether advertising is likely to mislead by simply comparing the challenged advertising to what was actually delivered. *See*, *e.g*., *Consumer Advocates v. Echostar Satellite Corp*., 113 Cal. App. 4th 1351, 1362, (2003) (reversing grant of summary judgment for defendant on issue of deception because whether a reasonable consumer would be misled raised fact questions that could not be resolved on summary judgment, even in the absence of survey evidence); *Silicon Image, Inc*., 642 F. Supp. 2d at 969 (same); *Miletak v. Allstate Ins. Co*., 2010 U.S. Dist. LEXIS 26913, *13 (N.D. Cal. March 5, 2010) (same); *O'Shea v. Epson Am., Inc*., No.

CV 09 -8063 PSG (CWx), 2011 U.S. Dist. LEXIS 85273, at *32 (C.D. Cal. July 29, 2011)

(allowing the jury to resolve whether reasonable consumers would be misled by a package claim

in absence of any survey). To state it another way, "California law generally reserves for the jury

the question of whether a reasonable consumer is likely to be deceived," and the jury is capable

of determining whether an advertisement is misleading even in the absence of other evidence.

*Mullins*, 178 F. Supp. 3d at 892.

      Here, even without Plaintiffs' survey evidence, there is a genuine triable question of fact

on whether Hain's labeling of the Products was likely to mislead reasonable consumers. That

evidence consists of at least the following:

- The labels themselves. Smith Dec. Exs. 1-5.
- Hain's admission that "We want our consumers to know that our products are wholesome, good for you, that you should feel good about giving your kids Earth's Best." Reynolds Dec., Ex. 1 at 35:13-15.
- Hain's internal documents acknowledging that ████████████████ ████████████████████████████████████████ Reynolds Dec., Ex. 4; *see also id.*, Ex. 7 ████████████████████████████████ *id.*, Ex. 2 ████████████████████████████████ ).
- Hain's admission that despite wanting to communicate that the products are wholesome, Hain has no idea what "healthy" means. *Id.*, Ex. 1 at 38:20 ("I don't know what makes a product healthy.")
- Hain' ████████████████████████████ . *Id.*, Ex. 8 ████████████████████████ *id.*, Ex. 9 ████████████ )

      The jury is entitled to see Hain's advertising scheme, see that Hain wants consumers to

believe the Products are healthy to increase its profits, see Hain's own admissions that added

sugar is harmful for children under two; and decide whether the scheme was likely to mislead.

     **E.**    **The Evidence Creates a Triable Issue of Fact Regarding Whether Consumers Were Likely to be Deceived About the Healthiness of the Products**

      Although Plaintiffs do not need survey evidence to proceed to trial, that evidence

overwhelmingly establishes a likelihood of deception and precludes summary judgment for Hain.

According to Dr. Dennis' study, over 86% of respondents, in fact, agreed the nutrient content claim "excellent source of calcium, vitamins C&D" communicated the Peach Banana Fruit Yogurt Smoothie pouch was healthy. Smith Dec., Ex. 27 (Dennis Report) at ¶ 83. "[C]ourts have found evidence sufficient [that a reasonable consumer would be deceived] where 21 to 34 percent of the recipients were deceived." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995). The Court has already conducted a full *Daubert* analysis of the Dennis survey and concluded that the survey should not be excluded. ECF 151 at 4, n. 3. This necessarily creates a genuine issue for trial. *See Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1199, (9th Cir. 2014) ("The admissibility, correctly viewed, of Dr. Jackson's expert testimony creates a genuine issue of material fact [for trial]."); *cf. Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148, 1167 (D. Nev. 2010) (holding in trademark case that survey results showing a 20% rate of confusion were sufficient to create triable issue of fact on likelihood of confusion).

Hain's argument that "there is no nexus between the challenged nutrient content claims and the alleged health concerns that the products pose" (Motion at 18) has already been rejected by this court and the Ninth Circuit, a fact Hain conveniently omits. Defendant made the same argument in its motion to dismiss, arguing that ""[i]t is utterly implausible that Plaintiffs or reasonable consumers would see an undisputedly true statement"—such as the labeling claims Plaintiffs challenge here—"and then draw conclusions about other totally unrelated nutritional characteristics." ECF 41 at 16. The Court rejected the argument, concluding that the statements, in the context of the label as a whole, contribute to the perception the Products are healthy. *See* Reynolds Dec., Ex. 57 at 12:16-13:5 ("The Court: And you see that in the context of the word "organic" appearing twice, Earth's Best, pictures of fruits and vegetables -- actually, organic appears three different times, and it's sort of the totality of the -- totality of the label. You know, it conveys the message of this is a healthy product."); *see also Howard v. Gerber Prods. Co*., No. 22-cv-04779-VC, 2023 U.S. Dist. LEXIS 54416, at *8 (N.D. Cal. Mar. 29, 2023) ("The better approach is to look to whether the prohibited nutrient content claim actually "contribute[s] to the [overall] impression that the product is healthy.") (citing *Krommenhock v. Post Foods, LLC*, No.

16-cv-04958-WHO, 2018 U.S. Dist. LEXIS 42938, at *15 n.11 (N.D. Cal. Mar. 15, 2018));

*Mullins*, 178 F. Supp. 3d at 889 ("The California statutes Sonner invokes recognize claims even

where representations may not be misleading in isolation, but are deceptive when considering the

package and advertisement as a whole."); *Johnson v. General Mills, Inc.*, 2011 U.S. Dist. LEXIS

154213, *6 (C.D. Cal. March 03, 2011) ("when each of these statements and images is properly

considered in context, General Mills successfully communicated a common message that eating

Yo-Plus aids in the promotion of digestive health in ways that eating normal yogurt does not.").

     To support its argument that Dr. Dennis's survey does not support Plaintiffs' claim,

Defendant incorrectly concludes that Dr. Dennis's survey does not measure "whether the

presence of these claims has any incremental impact on consumers' views of the products'

healthiness." Motion at 20. This is false. Dr. Dennis's survey used between-subjects

experimental design whereby study-eligible respondents were randomly assigned to one of two

conditions – the test group or the control group. Smith Dec., Ex. 27 (Dennis Report) at ¶ 47. The

two groups were administered the same consumer perception question about whether they

perceived the product packaging to be communicating that the "product is healthy." *Id*. The only

difference between the two conditions is in the product packaging shown to the respondents:

> • Test group respondents were shown the product actually marketed by Defendant
> having the Challenged Representation (i.e., "EXCELLENT SOURCE OF CALCIUM,
> VITAMINS C & D").

> • Control group respondents were shown a product without the Challenged
> "EXCELLENT SOURCE" Representation but were shown a product with the control
> statement "PACKAGING MADE WITH 100% RECYCLED CONTENT";

*Id*. Based on his survey, Dr. Dennis concluded the net deception rate is 40.4%. That is,

respondents shown the test group product (with the Challenged Representation) were 40.4

percentage points more likely than those shown the control group product to perceive that the

"product is healthy." *Id*. ¶ 84. Thus, contrary to Defendant's claim that Plaintiffs provide no

evidence of the impact of the at-issue claims with regards to the labels as a whole, Plaintiffs'

survey does just that in a reliable way that will allow the fact finder to determine whether a

reasonable consumer interprets the claim to mean the product is healthy.

**F.       Consumers Purchasing for Children Under Two Were the Target.**

Plaintiffs allege that the reasonable consumer, i.e., targeted consumer, is a consumer purchasing for children under two. *See Robie v. Trader Joe's Co.*, No. 20-cv-07355-JSW, 2021 U.S. Dist. LEXIS 117336, at *11 (N.D. Cal. June 14, 2021) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510 (2003)) ("A reasonable consumer is the 'ordinary consumer within a target population.'"); *Murray Dental Corp. v. Dentsply Int'l, Inc.*, 19 Cal. App. 5th 258, 272 (Cal. 2018) (analyzing whether the directions for an "ultrasonic scaler (Cavitron) for use during oral surgical procedures" were misleading to the target audience of dentist consumers); *Moore v. Trader Jo's Co*., 4 F.4th 874, 884 (9th Cir. 2021) (target was consumers of manuka honey in a "niche" market). As explained above, Defendant's targeted their marketing of these Products at consumers purchasing for children under two.

Even if the targeted consumer standard did not control who the reasonable consumer is in this case, Plaintiff's evidence still creates an issue of fact on whether a reasonable consumer purchases the products for children under two. Preliminarily, Plaintiffs themselves all purchased the Products for their children when their children were under two. Dr. Dennis's consumer perception survey asked respondents to indicate the age of the people for whom they purchased the Earth's Best products and 85% selected "under age 2 years." Reynolds Dec., Ex. 53 (2023 Dennis Reply) at ¶¶ 41-42. And, Dr. Dennis conducted a consumption behavior survey modeled off of Hain's expert's survey. Smith Dec., Ex. 29 (2024 Dennis Report). That survey also shows that 53.7-55.2% of consumers purchased the Products for a child under two when purchasing them for the first time. *Id*., ¶¶ 9-10. This easily crosses the threshold to show the reasonable consumer is one that could be misled. *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) (21-34% deception rate sufficient).

Defendant argues that because there is no statement on the front label indicating the Products are intended for children under two, "there is no evidence that suggests the label communicates an unambiguous message that the products are intended for children under two." Motion at 21. Defendant misstates Plaintiffs' fraud claim in attempt to make *McGinity* relevant. However, Plaintiffs do not allege that the aspects of the Products that lead consumers to purchase

the Products for their children under two are misleading, nor do Plaintiffs allege that the challenged nutrient content claims are what lead consumers to believe the Products are appropriate for children under two. Defendant is tying its disclaimer to Plaintiffs' fraud claim in a way that simply doesn't make sense. Plaintiffs allege that the nutrient content claims on the front label, such as "Excellent source of Calcium, Vitamins C & D," are misleading because they lead consumers to believe that the Products are healthy.  In its motion for leave, Defendant argues that the disclaimer "For Ages 2+" clarifies a supposed ambiguity, but whatever ambiguity it now generates does not relate to the nutrient content claims that Plaintiffs challenge. Put differently, "for ages 2+" does not clarify "Excellent source of Calcium, Vitamins C & D."

Even applying Defendant's twisted standard, it still doesn't work. First, the Ninth Circuit recently clarified the standard for ambiguity was recently clarified to be that a front label claim may be ambiguous where the label claim is "so devoid of concrete meaning" that a reasonable consumer would necessarily require more information before concluding the labels are making a specific promise. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. 2024). It's worth repeating that there is no label claim to examine on this issue because it's not part of Plaintiffs' claims. Rather, it is the context in which the Products are sold and marketed that indicate the targeted consumer is a consumer purchasing for children under two. But even if the absence of language could be considered a claim, the question would be whether a consumer 1) would look to the back label for more information and 2) would see the microscopic age disclaimer and conclude the Products are intended for children over two.[4] Defendant argues that Dr. Wilcox's survey supports its conclusion that the front label is ambiguous. However, at best Dr. Wilcox's survey shows that "a majority of respondents stated that the front label communicated no message about the age of the children for whom the products are intended." Motion at 21. This does not establish that a consumer would necessarily look to the back label

---

[4] Defendant also ignores the burden at summary judgment: it must present evidence that consumers look to the back label and see the disclaimer, which dispels confusion. Unlike at the motion to dismiss stage, the summary judgment standard does not allow the Court to decide this issue without *evidence* to support Defendant's position that the label is ambiguous and the back label clarifies the supposed ambiguity. Defendants presented none.

because of any confusion about the age for which the products are intended. Clearly, as evidenced by Dr. Dennis's surveys, consumers are making conclusions about the age for which the products are intended, and it's not based on the back label disclaimer as a majority of consumers purchase the products for children under two. Plaintiffs' evidence, including their testimony, Plaintiffs' expert testimony, and the manner the products are sold and the type of product the products are—purees intended for introduction of solids to infants and toddlers— establishes a dispute of fact as to whether a reasonable consumer would even look to the back label to determine the intended age, much less whether a consumer would see the disclaimer and decide not to purchase the product for a child under two.

### G.    The Evidence Creates a Triable Issue of Fact Regarding Whether the Products Are Unhealthy.

Hain would like to pretend there is no evidence that the Products are unhealthy for children under two, but in fact there is a mountain of evidence that establishes the Products are not healthy and not recommended sources of nutrients for children under two. Plaintiffs' expert Dr. Julie Taylor establishes as much. In order to understand why the Products are unhealthy, she provides an overview of the recommended feeding practices for children under two. Smith Dec., Ex. 30 ¶¶ 18-29. She explains that the time period between 6 months and 24 months "is a critical time for children to learn to accept healthy foods and beverages and to establish long-term dietary patterns." *Id.* ¶ 36.  Dr. Taylor explains the dietary recommendations leave no room for added sugar in the diet of a child under two (*id.* ¶ 45), and that the WHO recommends limiting the percent energy from total sugar to less than 30% for individual products to avoid overexposure to sweet foods that will result in a lifetime of bad eating habits. Reynolds Dec., Ex. 55 (Taylor Reply) ¶ 28. Dr. Taylor explains that the Products violate these health standards: "The Apple Blueberry Fruit Yogurt Smoothie pouch contains 4 grams of added sugar, which both the WHO and the USDA recommend completely avoiding. The Peach Banana Fruit Yogurt Smoothie pouch contains 15 grams total sugar, which accounts for 75% of the total energy in the Product, far exceeding the WHO recommended maximum of limit of 10%. Not only are the

Products high in both total and added sugar, but they are too easy to eat, leading to children eating more than they would if fed off a spoon." Smith Dec., Ex. 30 (Taylor Report) at ¶ 70.

Dr. Taylor also explains that a baby consuming a pouch is more likely to eat more purée than when fed with a spoon by a caregiver or by self-feeding. *Id*. ¶¶ 70, 80. Tellingly, Defendant's pouches do not instruct caregivers to feed a child off the spoon, and its advertising features babies consuming directly from the pouch. *See generally* Smith Dec., Exs. 1-5 (back labels instruct to consume directly from pouch); Second Am. Compl. ¶ 32. Because pouches are a food delivery mechanism, they are easier and faster to consume than eating with hands or a spoon, which increases the risk of overconsuming. In one study, infants ages 7-10 months who consumed pouches frequently, defined as more than or equal to 5 times/week during the past month, displayed higher food fussiness and more selective eating. Smith Dec., Ex. 30 at ¶ 86. Defendant's own expert concedes that the Products are "snack" products that would be eaten twice a day, i.e., 10-14 times/week. Smith Ex. 32 (Clemens Report) ¶ 21.

At base, Defendant argues that because there is no evidence that consuming just one pouch will be harmful, summary judgment is appropriate. However, consuming just one candy bar may not cause diabetes, but that doesn't mean it would be ok to market the candy bar as healthy. Tellingly, Hain's expert does not rebut Dr. Taylor's opinions that consumption of sweeter foods will lead to a preference for sweeter foods and has potential lifelong impacts. He in fact agrees that pureeing the food will make the food taste sweeter. Reynolds Ex. 56 at 65:10-16 ("the other part that may change [when fruit is pureed] is that the product may become sweeter"). Dr. Clemens agrees that children should increase the texture of food they consume in order to eat the family diet. *Id*. at 31:23-33:8. Dr. Clemens does not rebut Dr. Taylor's opinion that purees present a risk to the development of motor skills necessary to eat solid foods. Reynolds Dec., Ex. 55 (Taylor Reply) at ¶ 14. Nor does he rebut Dr. Taylor's opinion that the spout method of consumption leads to children overeating because they do not receive satiety cues. *Id*. And finally, he does not rebut Dr. Taylor's opinion that consuming these products displaces the intake of other foods. *Id*. In fact, Dr. Clemens agrees with more premises than the

disagrees. And, the basis for his disagreement boils down to the fact that he disagrees with recommendations from leading organizations like the USDA and WHO. *Id.*, Ex. 56 at 45:1-17.

Finally, Hain suggests that Plaintiffs must demonstrate physical injury from the products in order to show that the front label claims are misleading. Balderdash. The Products are harmful to the reasonable consumer because of the health risks they pose to infants and toddlers. Plaintiffs' evidence demonstrates why the Products present these risks, in great detail. Thus, summary judgment is not appropriate.

### H.    The Claims Are Not Preempted

Hain argues that "Because the USDA has expressly approved the labels of the Beef Medley and Chicken Casserole pouches, Plaintiffs' challenges to those labels are preempted." However, the analysis does not stop there. As a preliminary matter, Hain cites documents that were not produced in this litigation and thus the evidence should be excluded. *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[5]

Hain cannot simply assert that its labels are "USDA approved" and then receive a blanket defense. As an initial matter, there are two avenues for USDA approval with vastly different consequences for any preemption analysis. The first is "generic approval," in which the USDA does not actually review or evaluate the label. *See* 9 C.F.R. § 412.2(b). Instead, the manufacturer makes its own determination that the label bears "all applicable mandatory labeling features" and "bear claims and statements that are defined in FSIS's regulations or the Food Standards and Labeling Policy Book,"—including nutrient content claims—and the label is deemed generically "USDA approved." *Id.* Unsurprisingly, this type of "approval" has no preemptive effect. *Cohen v. ConAgra Brands, Inc*., 16 F.4th 1283, 1289 (9th Cir. 2021). It is only where the FSIS actually independently reviews and approves of a label—termed "sketch approval"—that preemption even enters the picture. *Id.*

---

[5] Hain describes these documents only as "a true and correct copy of the USDA's approval of the labeling of the Chicken Casserole Protein Puree Pouches." The documents are dated Feb. 10, 2021 and do not include a bates stamp. Smith Decl., Ex. 39.

Hain has not indicated what type of USDA approval it purportedly received. And even if it did receive sketch approval, any such preemption would be limited to Plaintiffs' claims that the labels are false and misleading as Defendant's own cases acknowledge. *See* Motion at 24-25. In effect, USDA approval amounts to a finding that the labels are not false and misleading, preempting state law conclusions to the contrary. *See*, *e.g.*, *Meaunrit v. The Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *7 (N.D. Cal. May 5, 2010) (distinguishing between unlawfulness claims and misleading claims in the preemption analysis and concluding unlawfulness claims are not preempted). But here, Plaintiff's primary claim is one of unlawfulness: i.e., that Hain's labels violate parallel state and federal regulations that prohibit nutrient content claims on food intended for children under two. *See* 21 C.F.R. § 101.13(b)(3); 9 C.F.R. § 317.313(b)(3) (prohibiting nutrient content claims on meat products intended for children under two); 9 C.F.R. § 381.413 (prohibiting nutrient content claims on poultry products intended for children under two). USDA lacks authority to approve of labels that violate its own regulations and Plaintiffs can challenge both the labels and the "approval" on that basis without running afoul of preemption. *See* 21 USC §§ 467, 607; *Nat'l Med. Enters. v. Bowen*, 851 F.2d 291, 293 (9th Cir. 1988) ("an agency's interpretation of a statute in a manner inconsistent with a regulation will not be enforced.").

## IV.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court deny Hain's Motion for Summary Judgment.

Dated: December 10, 2024          **GUTRIDE SAFIER LLP**

*/s/ Hayley A. Reynolds*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111

*Attorneys for Plaintiffs*