EXHIBIT 57

1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3          Before The Honorable Vince Chhabria, District Judge

4

5   HOWARD, et al,                    )
                                      )
6              Plaintiffs,            )
                                      )
7   vs.                               )   Case No. C 22-00527-VC
                                      )
8   HAIN CELESTIAL GROUP, INC.,       )
    et al,                            )
9                                     )
               Defendants.            )
10  _____    )

11                                    San Francisco, California
                                      Tuesday, August 10, 2023
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                  RECORDING 1:25 - 1:49 = 24 MINUTES
14
    APPEARANCES:
15
    For Plaintiffs:
16                                    Gutride Safier, LLP
                                      100 Pine Street
17                                    Suite 1250
                                      San Francisco, California
18                                      94111
                             BY:  HAYLEY A. REYNOLDS, ESQ.
19
    For Defendants:
20                                    Jenner and Block, LLP
                                      515 South Flower Street
21                                    Suite 3300
                                      Los Angeles, California 90071
22                           BY:  ALEXANDER M. SMITH, ESQ.

23                                    Jenner and Block, LLP
                                      353 North Clark Street
24                                    Chicago, Illinois 60654
                             BY:  DEAN N. PANOS, ESQ.
25

2

Transcribed by:              Echo Reporting, Inc.
                             Contracted Court Reporter/
                             Transcriber
                             echoreporting@yahoo.com

3

1  <u>Tuesday, August 10, 2023</u>                              <u>1:25 p.m.</u>

2                       P-R-O-C-E-E-D-I-N-G-S

3                            --oOo--

4          THE CLERK:  Now, calling civil case 22-527, Howard

5  et al versus Hain Celestial Group, Inc.

6      Will counsel please state your appearances for the

7  record, starting with the plaintiff?

8          MS. REYNOLDS:  Apologies, your Honor.  I'm having

9  a problem with my speaker.  Just one moment.  Can you hear

10 me?

11         THE COURT:  Yes.

12         MS. REYNOLDS:  Okay.

13         THE COURT:  Can you hear me?

14         MS. REYNOLDS:  Oh, now I can.  Okay.  There we go.

15         THE COURT:  Okay.

16         MS. REYNOLDS:  Good afternoon, your Honor.  Hayley

17 Reynolds, counsel for plaintiffs.

18         THE COURT:  Hi.

19         MR. SMITH:  And good afternoon, your Honor.  Alex

20 Smith for Hain Celestial.

21         THE COURT:  Hi.

22         MR. PANOS:  And good afternoon, your Honor.  Dean

23 Panos on behalf of Hain Celestial, although Mr. Smith will

24 be handling the -- any discussions with the Court on behalf

25 of --

4

1       THE COURT:  Okay.  So, you know, on the -- you

2  know, on the second issue that Hain Celestial raised, I

3  don't need to hear any argument about that, on the issue of,

4  you know, the back of the label clearing up an ambiguity on

5  the front of the label.  That -- the motion for

6  reconsideration is denied on that point.

7       On the first point, the fraud question and the Howard

8  -- what was -- the case was Howard vs. Gerber.  Obviously, I

9  have now concluded that I analyzed that issue incorrectly in

10  this -- the fraud issue in this case, right, and in the

11  Howard vs. Gerber case, I sort of identified how I -- you

12  know, I -- how I addressed it incorrectly in this case.

13       So, you know, there's no question that I analyzed the

14  issue incorrectly.  The question is just whether I should

15  grant a motion for reconsideration now or whether it -- this

16  can just be sorted out at summary judgment.  And I think

17  there are two questions implicated by that.

18       One is, does this affect the -- would this -- would my

19  granting of the motion or partially granting the motion and,

20  say, dismissing, you know, the fraud claims or some of the

21  fraud claims, would it affect the class certification

22  proceedings, and then -- and so -- and if not, then maybe

23  that is an argument for concluding that, you know, it

24  doesn't really -- yeah, I analyzed it incorrectly at the

25  motion to dismiss stage, but it doesn't really matter, and

5

1  we can just deal with it at summary judgment.

2      The other related question is, well, even if I applied

3  the standard that I adopted in the Howard vs. Gerber case,

4  would that result in dismissal of the fraud claims relating

5  to these labels, or would we need to conduct an analysis of

6  that?  And that may be further argument for just waiting

7  until the summary judgment stage of the proceedings to sort

8  of address the question.

9      So that's -- I mean, I guess that's mainly a question

10  for the defendants, but, Ms. Reynolds, maybe I'll start with

11  you and have you respond to both of those questions.

12          MS. REYNOLDS:  Sure, your Honor.  With regards to

13  the first one, the effect on class certification, if your

14  Honor were to dismiss the fraud claims without leave to

15  amend and certification were only to go forward on the

16  unlawfulness claim, then that certainly changes the scope of

17  class certification and what evidence and arguments we would

18  be putting forth there, because there is a difference in

19  some of the standards for a UCL unlawfulness claim versus a

20  fraud claim, for example, issues of reliance and materiality

21  are different for those two claims.

22          THE COURT:  Well, but you don't have to show

23  reliance for the absent class members, right?

24          MS. REYNOLDS:  That's right.  But there is an

25  issue -- so what -- the main issue comes down to the

6

1  interpretation by a reasonable consumer, and all of those

2  issues that get carried along with fraud are not present in

3  the unlawfulness claim.

4           THE COURT:  But why would that matter for the

5  class cert proceedings?

6           MS. REYNOLDS:  Well, it would just change, I

7  suppose, which claims are being certified, but it would be

8  the same class of purchasers, if that answers your question.

9           THE COURT:  Yeah.  But I'm -- like, you have a --

10 you have a class certification motion due in -- like pretty

11 soon, in like three weeks or something like that, right?

12 But it's the same -- I mean, it's the same class, and it's

13 all the same questions implicated about whether to certify

14 the class, whether we're talking about -- I mean, I guess

15 you're right, technically, if I dismiss those claims, I

16 wouldn't certify a class as to those claims.  But it's all

17 the same.  I mean, it would be the same class -- it would be

18 the same issues implicated in the decision whether to

19 certify the class, right?  I mean, I don't -- I'm not really

20 seeing why there would be -- there would be much of a

21 difference.

22           MS. REYNOLDS:  Well, the issue -- so I would want

23 to take some time here maybe to go back and make sure I have

24 clarity on -- before giving too much of an answer here.  But

25 I believe that the main issues are -- the difference is

7

1  going to be proving the misleading nature, so expert

2  evidence that's going come in to discuss why these products

3  are harmful.

4          THE COURT:  But that would be in summary judgment,

5  right?  That would not be at class certification.  You

6  wouldn't -- I mean -- because we don't care who's right and

7  who's wrong on the question of fraud at class certification

8  stage, right?

9          MS. REYNOLDS:  Fair, your Honor.  I suppose

10  there's -- we still anticipate at least a discussion of what

11  that common evidence would be on those issues and similarly

12  with what is a reasonable consumer standard and what -- and

13  I believe there is case law that requires for a fraud claim

14  and a misleading claim that a consumer survey needs to be

15  conducted and submitted at the class certification stage.

16  So that, I think, is actually the biggest difference, off

17  the top of my head.

18          THE COURT:  That surprises me.  I'm not saying I

19  don't believe you, but it's sort of surprising that you

20  would need to submit a consumer survey at the class

21  certification stage.  But anyway -- sorry.  Okay.  Go ahead.

22          MS. REYNOLDS:  Well, those -- that's really the

23  two big differences in what a class certification motion

24  would look like with an unlawfulness claim versus just the

25  -- or just the unlawfulness claim versus additionally the

8

1  fraud claim.  It comes down to a difference in what kinds of

2  expert evidence we would at least discuss and/or submit at

3  the class certification motion.

4        THE COURT:  Okay.  And then what about my second

5  question, which is, should we be, you know -- and I'm not

6  sure I articulated my second question very well, so I'll do

7  it again.  But, you know, assuming application of the

8  correct standard or, you know, what I concluded is the

9  correct standard in the <u>Howard vs. Gerber</u> case, would that

10  affect the outcome of the -- would that have affected the

11  outcome of the motion to dismiss?

12        MS. REYNOLDS:  So as we -- we explained this, I

13  think, in the opposition that we do not believe the outcome

14  would be different because the -- your Honor shifted to

15  examining the label as a whole, and what does this claim do

16  to perpetuate the understanding or the misleading nature of

17  the claim?  And while there were different statements at

18  issue in the <u>Gerber</u> case, we believe that the same issue or

19  the same analysis would result in plaintiffs having

20  sufficiently stated the claim for the fraud claims.  Because

21  these claims, like excellent source or the four grams

22  protein, et cetera, exists on labels in the context of

23  images of real fruits and vegetables, real picture images of

24  meats and beans, all the ingredients, alongside the terms

25  like "organic," and even the brand name Earth's Best, along

9

1  with explicit statements on some of the products, such as

2  "wholesome snacks" on the Organic Crunchin' Crackers and

3  "make nutritious habits happen."  The Earth's Best Organic

4  Letter of the Cookies Day (sic.) state that they are a

5  "nutritious and great tasting way for kids to learn their

6  ABCs."

7       We also have -- I recognize that this would be more

8  applicable to online buyers, but there are online statements

9  that perpetuate the idea that this is intended be a

10 nutritious product and that those excellent source claims in

11 the context of these labels and statements would reasonably

12 -- lead a reasonable consumer to believe these products are

13 healthy for their child under two.

14          THE COURT:  And so what you -- and so I guess --

15 the absolute worst case scenario for you would be, you know,

16 granting the motion for reconsideration, dismissing the

17 claims.  But I would have -- it would have to be with leave

18 to amend to give you an opportunity to better articulate why

19 the -- those aspects of the labels -- the nutrient content

20 claims on the labels are sort of misleading under the

21 standard articulated in Howard vs. Gerber.  That would be

22 your worst case scenario.

23       An alternative would be to -- you know, to -- you know,

24 to conclude that even under the standard articulated in

25 Howard vs. Gerber, you can't decide at the pleading stage

10

1  whether these are misleading, that -- you know, you can't

2  decide at the pleading stage definitively whether or not a

3  reasonable consumer would be misled by the nutrient content

4  claims in the context where they appear on the label.  You

5  have to go to -- you know, you have to go to expert

6  testimony and whatever to answer that question.  It may be a

7  jury question.  Maybe it's a question you can answer at

8  summary judgment.  But it's not a question that you can

9  answer on -- at the pleading stage, at least on these facts,

10 given these labels.

11    And so that, I guess, would be an argument for denying

12 the motion for reconsideration and just sort of plowing

13 ahead to the -- or -- I don't know if -- I don't know if,

14 technically, it would be denying reconsideration or granting

15 reconsideration and then reaching the same conclusion on

16 reconsideration.  That always confuses me.  But the outcome,

17 I guess, would be the same, which is, no, we're not going to

18 dismiss these claims because they're not amenable to

19 adjudication at the pleading stage.

20    MS. REYNOLDS:  Yes, your Honor.  And I think a

21 simple way to get there without getting in the weeds on

22 application of Gerber is perhaps going back to the standard

23 of reconsideration, which calls for a material change in

24 law.  And I recognize that, of course, your Honor's --

25 Gerber represents your change in thought and analysis here.

11

1  But, often, that material change in law really refers to

2  binding precedent.  And so it could be that there is a

3  denial for the motion for reconsideration because <u>Gerber</u>

4  doesn't represent the material change in law because it's

5  not binding precedent while still understanding for us,

6  going forward at summary judgment, et cetera, that this is

7  going to be, you know, your view of the analysis of these

8  claims.

9         THE COURT:  Okay.  All right.  I can't remember

10 who it was.

11    Mr. Smith, do you want to address those questions?

12        MR. SMITH:  Yes.  Thank you, your Honor.  I'll

13 start with the second question first, if that's okay.

14        THE COURT:  Yeah.

15        MR. SMITH:  I think that we all agree that the

16 Court's analysis -- the lens through which it viewed the

17 misleading claims in <u>Gerber</u> is the lens through which we're

18 going to view these claims for the rest of the case, whether

19 that be now, whether that be at summary judgment, that

20 that's the correct lens through which to view the misleading

21 claims.

22        THE COURT:  I mean, I don't know if it's the

23 correct lens, but it's -- you know, maybe it's got its own

24 problems, but it's more correct than the previous lens

25 through which I was viewing these claims.

12

1        MR. SMITH:  We certainly agree with that.  So

2   under -- you know, the -- in Gerber, I think this Court

3   correctly distinguished between statements that imply that

4   the product is healthy as a general matter -- that was the

5   phraseology the Court used -- versus "bare statements and

6   nutrients."  And I think that all of the statements at issue

7   here are bare statements and nutrients, right?  We have

8   statements like four grams protein, three grams plant

9   protein, zero grams of trans fat, even excellent source

10  claims, which are, you know, FDA-regulated nutrient content

11  claims that state how much of a nutrient is in the product.

12        THE COURT:  But, I mean, just looking at -- you

13  know, just as an example, like, you know, the first product,

14  the Protein Puree, and it says three grams of plant protein.

15        MR. SMITH:  Yes.

16        THE COURT:  But it also -- right next to it --

17  it's -- the name of the product is right next to it, which

18  is Protein Puree.  And you see that in the context of the

19  word "organic" appearing twice, Earth's Best, pictures of

20  fruits and vegetables -- actually, organic appears three

21  different times, and it's sort of the totality of the --

22  totality of the label.  You know, it conveys the message of

23  this is a healthy product.  And then I think you ask, well,

24  to what extent does the three grams of plant protein

25  statement -- the nutrient content statement contribute to

13

1  the message on the label of this is a healthy -- you know,

2  here's a healthy product for your baby.  And I think the

3  answer is, it could -- I think a reasonable consumer might

4  view that as contributing a significant amount to the

5  impression that it's a healthy product for your baby.  Why

6  isn't that -- why isn't it an issue that should be decided

7  at the summary -- I mean, at the pleading stage?

8         MR. SMITH:  Sure.  I think there are a few things

9  on that point, your Honor.  So one is that -- you know, the

10  statements they've challenged in this case are the nutrient

11  content claims.  It's not the use of the phrase "organic."

12  It's not the use of the phrase "Earth's Best."  It's not any

13  of the other images.  So I think it's really the question of

14  whether this statement -- you know, three grams protein,

15  say, is a statement that's likely to mislead reasonable

16  consumers about the healthiness of the product, you know,

17  even viewed as a whole.  And --

18         THE COURT:  But I think it would be fair.  Let me

19  -- and I apologize for interrupting, but I just -- I think

20  it would be fair to -- in deciding this motion for

21  reconsideration to imagine what their allegations would be

22  like in an amended complaint, right?  Because -- the

23  question is like, is it -- what's the point of granting the

24  motion for reconsideration?  Is anybody really prejudiced if

25  we deny the motion for reconsideration?  And I think -- you

14

1 know, imagining the allegations -- you know, they've got the

2 benefit of the <u>Howard vs. Gerber</u> decision.  They would sit

3 down and they would amend their complaint, and they would

4 articulate allegations about how the -- you know, the

5 appearance of the nutrient content claim in the context of

6 all the other stuff on the label, you know, is misleading,

7 and misleading from the standpoint of sort of conveying the

8 impression that it's a healthy product when it's not.

9 And, you know, it's hard -- I guess it's hard to

10 imagine -- once they sit down and they amend their complaint

11 to conform it to the standard set out in <u>Howard vs. Gerber</u>,

12 it's sort of difficult to imagine that that -- that those

13 claims would ultimately be dismissed.  So it seems like we

14 might be sort of -- you know, sort of hitting the rewind

15 button in this case, you know, and going way back to the

16 beginning for really no reason at all.

17 MR. SMITH:  I mean, your Honor, I think --

18 THE COURT:  Because, ultimately, you're going to

19 have to make your case at summary judgment on this.

20 MR. SMITH:  So, again, your Honor, I don't think

21 that -- regardless of what they were to plead in an amended

22 complaint, it's not clear to me -- not remotely clear that

23 they could allege these nutrient content claims are false or

24 misleading or likely to mislead a reasonable consumer.  Even

25 if they -- you know, I don't think that they can say that

15

1 these claims are what contributes to an overall perception

2 that the product is healthy.  Like, imagine, hypothetically,

3 these products without the nutrient content claims on them.

4 They still said "organic," they still said "Earth's Best,"

5 all of these things.  And it's not clear that the adding a

6 truthful, accurate nutrient content claim like three grams

7 of protein is going to make an -- you know, is going to

8 change a consumer's perception of whether the product --

9           THE COURT:  I agree with the statement you just

10 made.  It's not clear that it's going to change a consumer's

11 perception, but I don't think that's the standard at the

12 motion to dismiss, right?  To win on a motion to dismiss,

13 you have to sort of convince me that it's clear that it

14 wouldn't change a consumer's perception in a meaningful way

15 about the product being healthy -- the healthiness of the

16 product, right?

17           MR. SMITH:  Your Honor, I think that we could

18 convince you of that.  And I think that, you know, in

19 Gerber, I think this Court correctly distinguished between

20 these bare statements and nutrients and statements that

21 contribute to the overall impression that a product is

22 healthy.  And we are very convinced that the statements at

23 issue here, the nutrient content claims, fall very much in

24 the bare statements and nutrients bucket.  And a bare

25 statement and nutrient -- an accurate bare statement of a

16

1  nutrient can't be misleading as a matter of law.  And at the

2  very minimum, we think it's worth resolving that issue

3  before we sort of expend time and resources figuring out

4  whether we can certify a class on those claims.  It sort of

5  brings me to your first question --

6          THE COURT:  Okay.

7          MR. SMITH:  -- which is that I -- I don't totally

8  agree with Ms. Reynolds about the contours of our claims,

9  but I think that we can agree that the misleading claims,

10 even at the class certification stage, require an analysis

11 into how reasonable consumers would have understood the

12 labeling, whether there are material differences in how

13 consumers would understand the labeling, whether -- you

14 know, whether there's a class-wide theory of injury, and

15 that theory will depend on sort of the individual use case

16 and the circumstances under which consumers purchase these

17 products.  And regardless of whether we think the unlawful

18 claim is amenable to class certification, and we don't, that

19 claim is analytically distinct from the misleading claims,

20 the way that we will both approach it with our expert

21 discovery, our survey experts, and the way that we'll sort

22 of approach a class certification is going to differ.

23     And so I think it's worthwhile for us to determine

24 whether this case can proceed on these misleading claims

25 before we figure out how we're going to invest our time and

17

1  resources in the class certification.  Ultimately, it

2  doesn't make a lot of sense for us to litigate a claim at

3  class certification, spend probably hundreds of thousands of

4  dollars on surveys and expert work if, you know, the Court

5  will ultimately conclude that the misleading claims are not

6  viable as a matter of law.

7          THE COURT:  I hear what you're saying.  I briefly

8  was distracted by one passing comment you made, which was

9  that you don't believe that the unlawful claims are amenable

10  to class certification.  How do you think you're going to

11  get class certification defeated on the unlawful claims?

12          MR. SMITH:  We think that the injury -- even if

13  you assume that the products are intended specifically for

14  children under two and that the claim is unlawful -- and

15  we're not conceding that.  But even if you were to assume

16  that for purposes of class certification, the injury that a

17  consumer would have suffered as a result of the use of those

18  claims is going to vary a lot, depending on the age of the

19  child for whom the product was purchased, the parents'

20  understanding of who the product was intended for, you know,

21  a variety of sort of circumstances relating to the use case

22  for this product.

23          THE COURT:  So you're saying that they can't just

24  have a price premium model that would work in this case?  I

25  mean, I -- why -- I guess I don't understand why not.

18

1          MR. SMITH:  Well, because I think the price

2   premium --

3          THE COURT:  I realize we don't have a motion for

4   class certification pending, but I was just -- I mean, it

5   jumped out at me.  I mean, why -- I don't understand why a

6   price premium type model wouldn't work in a case like this.

7          MR. SMITH:  Well, a price premium model is

8   supposed to capture a certain type of economic injury.  And

9   our point here is that there are certain consumers,

10  depending on the age of the child for whom the product was

11  purchased, the use case, et cetera, who would have suffered

12  no injury, economic or otherwise.  And because I think that

13  the injury that any parent or any consumer would have

14  suffered as a result --

15         THE COURT:  I mean, I thought this was a product

16  that was designed for babies who are the age of my baby, and

17  I thought that it was healthy.  So, you know, they convinced

18  me that it was a healthy product for babies the age of my

19  baby.  And it turns out that the FDA has said, no, it's not,

20  or we can't assume that it is.  And if I had known that, I

21  wouldn't have paid as much for it.

22         MR. SMITH:  Well, sure.  But if a parent, you

23  know, bought this product -- I mean, our view is these --

24  that these products are intended specifically for a child

25  over two, that they're intended for preschool age children

19

1 between ages two and five.  And if you're a parent who

2 believes that these products are intent --

3          THE COURT:  Right.  And if you're -- if that ends

4 up being correct, you win on the merits.  But I'm just

5 talking about class certification.

6          MR. SMITH:  No, I understand that, your Honor.  So

7 if you're a parent who buys the product for a child over

8 two, understands the product is for a child over two,

9 there's no injury that you suffered as a result.  You bought

10 -- you got exactly the product you purchased with a nutrient

11 content claim that accurately reflected the nutritional

12 profile.

13          THE COURT:  But we -- I mean, in these -- we never

14 engage in that sort of inquiry in these class action food

15 labeling cases.  I mean, you could say that about every food

16 labeling case, or you could say, well, some members of the

17 class might have known that this product was not all

18 natural, or some -- you know, some of the -- some of the

19 class members might have known that it contained this

20 ingredient, even though you implied on the front that it

21 didn't contain this -- I mean, you can say that about every

22 food labeling case.  I just don't see how that's going to

23 get you out of class certification.  But maybe we shouldn't

24 -- maybe we shouldn't.  I have a few more cases on calendar.

25 Maybe we shouldn't talk about it anymore now.  I'm obviously

20

1  happy to entertain these arguments more seriously when they

2  come in.

3          MR. SMITH:  Yeah.

4          THE COURT:  Is there anything else you wanted to

5  say on the motion for reconsideration before we go to the

6  next case?

7          MR. SMITH:  You know, I think that it's worth --

8  unless you are dead set on the point about McGinity, I think

9  there are some points that we would want to make on that --

10          THE COURT:  Dead set on the point about what,

11  sorry?

12          MR. SMITH:  The first issue about McGinity v.

13  Procter & Gamble, the new --

14          THE COURT:  Oh, yeah, I'm dead set about that.

15          MR. SMITH:  Okay.  Then I won't waste your time,

16  and I appreciate you hearing us out.

17          THE COURT:  Okay.  Thank you very much.  I know

18  that you have this class certification motion coming up very

19  soon, so I will -- I want to give it a little more thought,

20  but I'll issue a ruling very, very shortly.

21          MR. SMITH:  Understood, your Honor.  Thank you.

22          THE COURT:  Okay.

23          MS. REYNOLDS: Thank you.

24          THE COURT:  Thank you.

25      (Proceedings concluded at 1:49 p.m.)

1            CERTIFICATE OF TRANSCRIBER

2

3      I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14                 

15

16            Echo Reporting, Inc., Transcriber

17              Friday, August 18, 2023

18

19

20

21

22

23

24

25